*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAWRENCE B. BRADFIELD, | Civil Action No.: 17-4862(FLW) |
| Plaintiff, | **OPINION** |
| v. | |
| HEARTLAND PAYMENT SYSTEMS, LLC, | |
| Defendant. | |

**WOLFSON, District Judge:**

Presently before the Court is Defendant Heartland Payment Systems, LLC's ("Defendant" or "Heartland") motion to dismiss Plaintiff Lawrence Bradfield's ("Plaintiff" or "Bradfield") remaining single-count Complaint,[1] which seeks a declaratory judgment that non-solicitation provisions in the parties' employment agreement are void and not enforceable. For the reasons set forth below, Defendant's motion is **DENIED**.

**BACKGROUND and PROCEDURAL HISTORY**

The following relevant facts are taken from the Plaintiff's Complaint. Bradfield works in sales in the credit card processing industry. *See* Compl., ¶ 8. From June 2014 to June 2017, Bradfield was employed as a Relationship Manager by Heartland, a provider of credit card payment processing technology. *Id.* at ¶¶ 10,14. In connection with Plaintiff's employment,

---

[1] Plaintiff has voluntarily dismissed Counts II and III.

1

Bradfield and Heartland entered into an agreement, entitled "Relationship Manager Agreement"[2] ("RM Agreement"), which contains, in relevant part, the following non-solicitation provisions:

(8) <u>Non-Solicitation</u>

(i) During the period of Employee's employment with HPS and for a period of twelve (12) months after Employee's termination for any reason, Employee hereby agrees that he/she will not: (i) solicit, entice, or induce any HPS Merchant Account or other party having a contractual or business relationship with HPS to terminate or modify its contractual or business relationship with HPS or assist any other person or entity to do so; (ii) accept business from or provide services to any HPS Merchant Account or other person having a contractual or business relationship with HPS, or assist any other person or entity to do so; or (iii) receive compensation, other than from HPS, that is related to any HPS Merchant Account.

(ii) During the period of his/her employment with HPS and for a period of thirty-six (36) months after Employee's termination for any reason, Employee hereby covenants that he/she will not: (i) solicit, entice or induce any HPS Merchant Account or any new owner of an HPS Merchant Account for which Employee has been compensated by HPS to modify its contractual or business relationship with HPS or assist any person or entity to do so; (ii) accept business from or provide services to any HPS Merchant Account or any new owner of an HPS Merchant for which HPS has been compensated by HPS, or assist any other person or entity to do so; or (iii) receive compensation, other than from HPS, that is related to an HPS Merchant Account or any new owner of an HPS Merchant for which employee has been compensated by HPS.

(9) <u>Non-Solicitation of Affiliates</u>

During the period of Employee's employment by HPS and for a period of twenty-four (24) months after termination for any reason, Employee will not directly or indirectly solicit, entice, or induce any HPS Affiliate to terminate or modify its contractual or business relationship with HPS or assist any other person or entity to do so. "Affiliates" shall include, but shall not be limited to, trade associations, banks, value added resellers (VARs), referral service providers (RSPs), franchisors, purchasing groups, chambers of commerce and other organizations and groups that have contractual or business relationships with HPS, and whose members or customers are encouraged to do business with HPS as a result of that contractual or business relationship.

---

[2] According to the RM Agreement, the contract is governed by and construed in accordance with, the laws of New Jersey. RM Agreement, ¶ 16.

(10) <u>Non-Solicitation of Employees</u>

>During the period of Employee's employment by HPS and for a period of twenty-four (24) months after termination for any reason, Employee will not directly or indirectly solicit, recruit or hire any employee of HPS to work for a third party other than HPS or engage in any activity that would cause any employee to violate any agreement with HPS.

RM Agreement, ¶¶ 8-11.

For an unspecified reason, on June 2, 2017, Bradfield resigned from Heartland. According to Plaintiff, when he resigned, he was not in violation of this RM Agreement. Compl.,¶ 21. However, Bradfield maintains that the restrictions set forth in the above-referenced provisions are "unreasonable and unenforceable as a matter [of] law and fact and/or alternatively superseded by other agreements between Mr. Bradfield and Heartland," *id.* at ¶ 36, such as the Partial Commission Purchase Agreements. *Id.* at ¶¶ 39-40. More specifically, Plaintiff alleges that he entered into a series of these purchase agreements, the last of which was executed on September 30, 2016 ("2016 Purchase Agreement"). According to Plaintiff, this Agreement set forth certain post-employment obligations that Bradfield owed to Heartland, and those obligations superseded the obligations stemming from the RM Agreement. The relevant provision of the 2016 Purchase Agreement states:

>In consideration for the compensation provided for herein, without the prior written consent of HPS, for a period of thirty-six (36) months after Seller's Agreement, whichever is later, Seller hereby covenants that he/she will not: (i) solicit, entice or induce any HPS Merchant Account or any new owner of an HPS Merchant Account for which Employee has been compensated by HPS to modify its contractual or business relationship with HPS or assist any person or entity to do so; (ii) accept business from or provide services to any HPS Merchant Account or any new owner of an HPS Merchant for which Seller has been compensated by HPS, or assist any other person or entity to do so; or (iii) receive compensation, other than from HPS, that is related to an HPS Merchant Account or any new owner of any HPS Merchant for which Seller has been compensated by HPS.

2016 Purchase Agreement, ¶ 4. While Plaintiff also claims that this particular provision should be voided, he nonetheless avers that he is only restricted by those obligations after resigning from Heartland.

On June 30, 2017, Bradfield brought this action against Heartland, seeking a declaratory judgment that the RM Agreement's non-solicitation provisions are void and unenforceable because 1) the provisions are overbroad and not necessary to protect Heartland's legitimate business interests; and 2) the September 2016 Purchase Agreement supersedes the non-solicitation provisions of the RM Agreement, to the extent the RM Agreement purports to impose post-employment obligations on Bradfield. In addition, Bradfield seeks a declaratory judgment that the post-employment restrictions set forth in the September 2016 Purchase Agreement are also overbroad and unenforceable.

Bradfield is currently employed at Above & Beyond, a competitor to Heartland. He avers that these post-employment restrictive provisions prevent him from obtaining and/or continuing gainful employment and cause further injury by damaging his reputation in the industry and his ability to service clients. Bradfield submits that these injuries cannot be adequately compensated with a money judgment, and thus, injunctive relief under the Declaratory Judgment Act is necessary.[3]

Since the filing of the Complaint in June 2017, the parties engaged in discovery, and in fact, according to last Scheduling Order issued in this case, fact discovery has closed. *See* Scheduling Order dated October 16, 2017. Notably, Heartland's counsel deposed Bradfield in January 2018. Based on Bradfield's testimony, Heartland filed its motion to dismiss for lack of

---

[3] Bradfield initially pursued, but voluntarily dismissed, causes of action for breach of contract and violation of the California Labor Code.

subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), on the basis that there is no justiciable case or controversy.

## DISCUSSION

**I. Standard of Review**

**A. Subject Matter Jurisdiction**

A party may move for dismissal under Fed. R. Civ. P. 12(b)(1) based on lack of subject matter jurisdiction. When faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction. If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." *Id.* Factual challenges attack the factual basis for subject matter jurisdiction; that is, the defendant argues that the allegations on which jurisdiction depends are not true as a matter of fact. *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 (3d Cir. 2002); *see also U.S. ex rel. Atkinson*, 473 F.3d at 514 (stating that a jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites.").

"[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Further, the court is "permitted to make factual findings, beyond the pleadings, that [a]re decisive to determining jurisdiction." *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008). However, a court should not rule on the merits of a plaintiff's case under Rule 12(b)(1) in light of

the fewer procedural protections accorded to a plaintiff. *Id.* at 144-45 ("By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.")

**B.   Ripeness**

Under the Declaratory Judgment Act, a party seeking declaratory judgment must demonstrate the existence of an actual case or controversy. 28 U.S.C. 2201(a); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). "The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, 'of sufficient immediacy and reality to justify judicial resolution.'" *Peachlum v. York, Pa.*, 333 F.3d 429, 433 (3d Cir. 2003). In that connection, the subject matter jurisdiction of federal courts is limited to the adjudication of actual cases or controversies. This is rooted both in the language of Article III of the Constitution and in the Declaratory Judgment Act. 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."). A justiciable matter must be not an abstract question but instead involve a "real and substantial controversy." *Aetna Life Ins. Co. of Hartford, Connecticut v. Haworth*, 300 U.S. 227, 241 (1937).

Despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the discretionary language of the Declaratory Judgment Act means federal courts have "no compulsion to exercise [the] jurisdiction" granted by the statute. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). That is, the statute "confers a discretion on the courts rather than an absolute right

6

upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288.

"A motion to dismiss for lack of ripeness is properly brought pursuant to Rule 12(b)(1)." *Abraxis Bioscience, Inc. v. Navinta LLC*, No. 07-1251, 2008 WL 2967034, at *2 (D.N.J. Jul. 31, 2008) (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)). The motivation behind the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). To determine whether a matter is ripe, courts "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005) (citing *Abbott Labs.*, 387 U.S. at 149). In that connection, the Third Circuit set forth a multifactored-test in *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990). First, the court considers the adversity of the parties' interests. *N.E. Hub Partners*, 239 F.3d at 342 (citing *Step-Saver*, 912 F.2d at 647). Second, the court determines "the probable conclusiveness of a judgment." *Id.* Third, the court ascertains "the practical utility to the parties of rendering a judgment." *Id.* (footnote omitted).

## II. *Step-Saver* Test

Heartland moves to dismiss for lack of subject matter jurisdiction by mounting a factual challenge to Bradfield's Complaint. In doing so, it relies on evidence outside of the pleadings, namely, Bradfield's deposition testimony. Heartland argues that Plaintiff's claims are not ripe because they do not meet any of the elements of the *Step-Saver* test. As such, Heartland argues that in this lawsuit, Bradfield merely seeks a ruling on the law contingent on a hypothetical set of

7

facts. Specifically, with respect to the first *Step-Saver* factor, Heartland argues that there is no adversity of the parties' interests, since there is no substantial probability of a feared future event—litigation arising from a violation of the non-solicitation covenants. As proof, Heartland repeatedly cites to Bradfield's statements in his deposition that he did not violate and does not intend to violate any agreement he had with Heartland, particularly the covenants in the RM Agreement. Heartland insists that to show a judiciable controversy, Bradfield must have testified to immediate, concrete plans to violate the restrictive covenants in order for adversity to exist between the parties. Instead, Bradfield's claim, Heartland maintains, is contingent on the unlikely scenario that he will violate the non-solicitation covenants.

As to the second factor, Heartland argues that no conclusiveness would arise from a declaratory judgment, because such a judgment would be contingent on a hypothetical set of facts. Defendant reasons that a party, such as a plaintiff, who seeks advice on what the law would be is not entitled to a declaratory judgment. Finally, on the factor of practical utility to the parties, Heartland again argues that Bradfield's deposition testimony demonstrates that this case is not ripe. Since Bradfield has no plan to violate the RM Agreement, Heartland reasons, there is no practical benefit to a declaratory judgment.

Distilled to its essence, Heartland's reasoning is premised on the notion that the harm to Bradfield lies only in a future scenario in which Bradfield violates the RM Agreement – a scenario that is, by Bradfield's own admission, improbable. In my view, Heartland's premise is erroneous. The harm to Bradfield which he seeks to remedy by a declaratory judgment is the substantial, realized harm of his preclusion from obtaining clients he could otherwise pursue absent the various non-solicitation provisions in the parties' agreement. Below, I will analyze each of the *Step-Saver* factors.

### A. Adversity of Interests

"Parties' interests are adverse where harm will result if the declaratory judgment is not entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). When "the plaintiff's action is based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to give rise to a case or controversy within the meaning of Article III." *Armstrong World Industries, Inc. v. Adams,* 961 F.2d 405, 412-13 (3d Cir. 1992). However, it is not necessary for the party seeking a declaratory judgment to have suffered an actual harm to establish adversity of interest; rather, the element of adversity can be demonstrated so long as there is substantial threat of real harm. *Id.* at 412.

Defendant argues that, in the context of restrictive covenants, courts have found that if there is no substantial probability that plaintiff will violate the agreement, no adversity of interests exists. In so arguing, Defendant relies on out-of-circuit decisions that are either misplaced or distinguishable. First, Defendant cites *Kelly v. Evolution*, 626 F. Supp. 2d 364 (S.D.N.Y. 2009), for the proposition that when a former employee had not violated and expressed no current intent to violate an employment restrictive covenant, the employee's claims related to the enforcement of that covenant are not ripe for review. However, the *Kelly* Court only denied plaintiff's summary judgment motion — which was filed less than a month after the case was brought — with respect to his declaratory judgment claim related to a non-recruitment covenant; while the court found that the claim was not ripe since the plaintiff had not indicated that he was intending to violate the covenant, the court noted that "[g]iven the paucity of the record on these matters and the reasonable duration of the covenant, construing the scope and legality of the non-recruitment provision at this time would be imprudent." *Id.* at 377 n.1. Simply put, the court declined to address the issue at

the early stage of litigation, but importantly, the court did not dismiss the claim on jurisdictional grounds, which Defendant, here, seeks.

Defendant cites to other inapposite cases, such as *Accelecare Wound Centers, Inc. v. Bank of New York*, No. 08-8351, 2009 U.S. Dist. LEXIS 71862 (S.D.N.Y. Aug. 11, 2009), *Bruhn v. STP Corp.*, 312 F.Supp. 903 (D. Colo. 1970) and *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-2591, 2017 U.S. Dist. LEXIS 74367 (D. Kan. May 15, 2017). In each of those cases, the court dismissed the plaintiff's declaratory judgment claim not only on the basis that the plaintiff did not intend, or take some steps, to violate the terms of the restrictive covenant, but also that the defendant-employer had not threatened litigation or otherwise evinced an intention to pursue the plaintiff-employee should that employee violate the terms of the covenants. Indeed, the courts additionally considered, and partly based their decisions on, the lack of evidence demonstrating that "there has been [a] threat of suit by the defendant, [or that] the defendant claimed that any action heretofore taken by plaintiffs has resulted or will result in the immediate future in a breach of the covenant." *Bruhn*, 312 F.Supp. at 907; *see Accelecare Wound*, 2009 U.S. Dist. LEXIS 71862, at *20 (plaintiffs' "pleading do not indicate that Accelecare plans to enforce the covenant against them"); *In re Syngenta*, 2017 U.S. Dist. LEXIS 74367, at *193.

In fact, the Third Circuit has advised that in determining ripeness, a plaintiff need not suffer a completed harm to establish adversity of interest between the parties. *Armstrong World Indus.*, 961 F.2d at 412; *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 193 (3d Cir. 2004). In some situations, "present harms will flow from the threat of future actions." *Id.* For example, in the context of restrictive covenants, the Third Circuit, in *Carmerlo v. Howard Johnson, Co.*, 710 F.2d 987 (3d Cir. 1983), explained:

> Stripped to these essentials, the restrictive covenant claim does not present a case or controversy. The record does not reveal that plaintiff even contemplates activity

> arguably in violation of the covenants. She has not alleged an intention to build or engage in competitive activity, or *that such actions by her would meet with opposition by defendant*. These shortcomings are not merely illusory. The passage of more than twenty years since the inception of the lease may have brought such changes in the surrounding communities that the restrictions are no longer of any interest to defendant.

*Id.* at 990 (emphasis added).

Here, an adversity between the parties exists. Defendant insists that because Plaintiff testified that he does not intend to violate the restrict covenants at issue, the declaratory judgment claim is not ripe for review. While that may be one circumstance to consider, there are other facts in this case that tip the scale in favor of finding adversity of interests. First, Plaintiff is currently working for a competitor and brought this lawsuit to void the subject covenants in order to in engage in certain employment-related conduct that would be prohibited by the employment agreement. Although Plaintiff testified that he does not intend to run afoul of the covenants, what differentiate this case from others cited by Defendant is that Heartland, here, has not expressly disavowed the restrictive covenants, or otherwise indicated that it does not intend to enforce the restrictions should Plaintiff engage in any purported prohibited conduct. To the contrary, after Plaintiff resigned from his employment, he received a letter from Heartland advising:

> Please remember that even though you are no longer [a Heartland] employee, you continue to owe [Heartland] certain well-defined confidentiality, non-compete, non-solicitation and non-disclosure obligations. These obligations are outlined in the Sales Agreement you signed. Please be advised that, in the event you violate any of these obligations, [Heartland] *will seek all available legal and equitable remedies*.

Letter dated June 2, 2017 (emphasis added).

With respect to this particular letter, Defendant argues that because the form letter was sent as a matter of course by its Human Resources to Plaintiff after he resigned, it should not be read as a threat of litigation. Defendant's argument misses the mark. I recognize that the letter did not

11

threaten immediate litigation since Plaintiff had not taken any steps to violate the restrictive covenant at the time. But, the inquiry does not end there; guided by the Third Circuit, to find an adversity of interests, I may also consider whether Defendant had expressed its intention to forego enforcement of the restrictive covenants should Plaintiff engage in prohibited conduct. *See Carmerlo*, 710 F.2d at 990; *see also Salvation Army v. Department of Community Affairs*, 919 F.2d 183, 192 (3d Cir. 1990) (no adversity where state gives "express assurance that there will be no enforcement"); *Pic-A-State Pa, Inc. v. Reno*, 76 F.3d 1294, 1299 (3d Cir. 1996) (holding that parties' interests were adverse because "the Government . . . has not expressly disavowed an intent to prosecute."); *U.S. Water Services, Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 977 (8th Cir. 2015) ("[W]here . . . the declaratory judgment defendant refuses to grant the declaratory judgment plaintiff a covenant not to sue, this provides a level of additional support for the finding that an actual controversy exists." (citing *Arris Group v. British Telecommunications PLC*, 639 F.3d 1268, 1381 (Fed. Cir. 2011) (quotations omitted)). On that point, I find that Defendant has not taken that step. Rather, not only did Defendant sent the HR letter to remind Plaintiff of his obligations under the covenants, since this lawsuit was filed, Defendant has continued to defend this case, and tellingly, indicated in this very litigation that Plaintiff is bound by the restrictive covenants. *See, e.g.,* Heartland's Ans., ¶¶ 25, 27, 36, 42, 46 ("Heartland further denies that Bradfield can legitimately contend that he is not subject to or bound by the restrictive covenants contained within his RMA.").

As a matter of fairness, I cannot adopt Defendant's position. Clearly, Heartland has refused to agree not to enforce the restrictive covenants, which would leave Plaintiff in a precarious situation; that is, Plaintiff is uncertain as to whether he would be embroiled in a lawsuit should he

take the step to violate the covenants.[4] "Resolution of such uncertainty is one of the main purposes of declaratory judgments." *Arakelian v. Omnicare*, 735 F. Supp. 2d 22, 41 (S.D.N.Y. 2010)("Omnicare cannot move to dismiss Arakelian's claim; refuse to agree not to enforce the Restrictive Covenants Agreement; and at the same time claim that Arakelian has not shown that it intends to enforce the agreement."); *see Stryker v. Hi-Temp Specialty Metals, Inc.*, No. 11-6384, 2012 U.S. Dist. LEXIS 28414, at *14 (D.N.J. Mar. 2, 2012)(finding that a controversy existed notwithstanding plaintiff-employee's assertion that he did not violate the restrictive covenant); *Wellness Grp. LLC v. King Bio. Inc.*, No. 1:12-00281, 2014 U.S. Dist. LEXIS 61073, at *3 (W.D.N.C. April 30, 2014) (noting that plaintiff's choice not to violate an agreement did not "minimize the nature of controversy between the parties.").

In this Court's view, Defendant cannot claim that Plaintiff has not presented a judiciable controversy based on a lack of an immediate harm, and at the same time, hold Plaintiff accountable to the restrictive covenants, which Plaintiff argues are not enforceable. To find that Plaintiff, in this situation, can only resolve the present dispute by violating the covenant first, would run counter to the purpose of the Declaratory Judgment Act. *See Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008)("The purpose of the Declaratory Judgment Act 'is to provide . . . relief from uncertainty and delay regarding [a party's] legal rights.'" (quoting *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987)). Accordingly, I find that Plaintiff has met the element of adversity of interests.

---

[4] I also note that if Plaintiff were to violate the covenant, the parties' agreement sets forth certain financial penalties for the breach. *See* RM Agreement, ¶ 5.

## B. Conclusiveness

"Conclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." *NE Hub Partners*, 239 F.3d at 344 (citing *Step-Saver*, 912 F.2d at 648). In other words, "the legal status of the parties must be changed or clarified by the declaration." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1155 (3d Cir. 1995) (citing *Step-Saver*, 912 F.2d at 648). Like the adversity factor, conclusiveness raises a question of contingency. In that regard, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300. This factor "also addresses the extent to which further factual development of the case would facilitate [a] decision, so as to avoid issuing advisory opinions, or whether the question presented is predominantly legal." *NE Hub Partners*, 239 F.3d at 344 (citing *Travelers Ins. Co.*, 72 F.3d at 1155).

Here, Heartland argues that that because Plaintiff conceded that he has not breached, and does not intend to breach, the non-solicitation covenant, a ruling in this matter would not definitively define the parties' rights. I disagree. Again, Heartland's argument does not take into account the fact that it has not repudiated the non-solicitation covenants. In that regard, Plaintiff is currently subject to the covenants' restrictions, which may require Plaintiff to forego legitimate business opportunities.[5] As such, Plaintiff is not seeking to address a risk of harm based upon a hypothetical set of facts or a future contingency. Instead, as I have explained, Plaintiff seeks to address the present harm that he experiences now — prohibition from pursuing Heartland's clients and employees while he is employed by a competitor. A declaratory judgment in this case would bring about conclusive clarity as to the parties' rights and obligations vis-à-vis the restrictive

---

[5] While I find that Plaintiff has presented a judiciable controversy and that his claim is ripe, I make no comment as to the merits of the claim.

covenants. *See Arakelian*, 735 F. Supp. 2d at 40-41 (finding substantial controversy where plaintiff seeking declaratory judgment that non-solicitation agreement was unenforceable); *see also Westcode, Inc. v. Mitsubishi Electric Corporation*, 171 F. Supp. 3d 43, 50 (N.D.N.Y. 2016) (finding conclusiveness because a judgment would reduce the potential for future legal disputes).

Defendant also contends that there is a complete absence of facts to guide this Court's decision or to make any declaratory judgment conclusive. In that connection, Defendant goes on to provide the Court with an example. According to Defendant, in the event the Court declares the subject covenants enforceable, such a ruling would not be a decree of conclusive character, because disputes would undoubtedly arise should Plaintiff elect to solicit Heartland's clients or employees despite this Court's finding. Defendant's argument lacks merit. If this Court declares the subject covenants enforceable, Plaintiff would be prohibited from engaging in certain conduct. Should Plaintiff take steps to violate the covenants in the future, clearly, Defendant may bring a new suit against Plaintiff to resolve those disputes. Those future contingencies, however, do not have any relevance to the case at hand. Here, I am only called upon to decide whether the restrictive covenants should be voided as a matter of law; a judgment entered in this case would conclusively decide this issue. Therefore, Plaintiff has met the second *Step-Saver* factor.

### C. Practical Utility

The third *Step-Saver* factor requires the court to consider whether a declaratory judgment will affect the parties' decisions "by alleviating legal uncertainty." *Surrick v. Killion*, 449 F.3d 520 (3d Cir. 2006) (citing *Step-Saver*, 912 F.2d at 649 n.9). Defendant argues that because Plaintiff does not intend to breach the RM Agreement, there is no practical utility to a judgment. For support, Heartland looks to *Armstrong*, 961 F.2d at 423. In *Armstrong*, plaintiffs sought declaratory judgment that a state statute was unconstitutional. 961 F.2d at 409. The Third Circuit

held that "the proper focus of the utility inquiry is the effect of a declaratory judgment on the parties' plans of action—not *third* parties' plans of action." *Id.* at 423 (emphasis in original). The utility factor was not met in that case, because a declaratory judgment would not have had practical effect on the parties' conduct; rather, only a potential third-party would be affected. *Id.*

Unlike *Armstrong*, a declaratory judgment in this case provides utility to the parties themselves, not a hypothetical third-party. A declaratory judgment would alleviate uncertainty as to the legality of the RM Agreement's restrictive covenants. Plaintiff, working for a competitor of Heartland, would then be able conduct himself accordingly. *See Surrick*, 449 F.3d at 529 ("A grant or denial of relief would therefore materially affect the parties and serve the purpose of the Declaratory Judgment Act – 'clarify[ing] legal relationships so that plaintiffs . . . [can] make responsible decisions about the future.'") (citing *Step-Saver*, 912 F.2d at 649); *see also Moore v. Wallace Computer Servs.*, 898 F. Supp. 1089, 1098 (D. Del. 1995) (finding utility in a declaratory judgment because it "permit[s] the parties to alter their conduct."). Thus, the third factor is also met.

Having met all three *Step-Saver* factors, Plaintiff has properly brought a ripe claim pursuant to the Declaratory Judgment Act, which presents a judiciable case and controversy.[6] For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

Dated: November 5, 2018
/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge

---

[6] Again, the Court reminds the parties that this Opinion does not in any manner discuss or adjudicate the merits of Plaintiff's claim.